Dear Mr. Lafser:
This is in response to your request for our opinion as follows:
 Does the state have adequate legal authority to issue and enforce general permits pursuant to 40 CFR 122.59?
Section 122.59 of Title 40 of the Code of Federal Regulations (CFR) provides for the issuance of general permits under the National Pollutant Discharge Elimination System (NPDES) permit program. The original concept of an NPDES permit was that it would be issued, after application, for an individual pollutant source. 40 CFR 122.4, 122.53. Certain public notice and comment procedures attend the issuance of an NPDES permit. See generally, 40 CFR 124.10-15. In Opinion No. 255 — 1974 (copy attached), we held that Sections 204.006 to 204.141, RSMo 1978 (the Missouri Clean Water Law), provide adequate authority to issue and enforce permits in Missouri which meet the requirements under federal law for a state-run NPDES individual permit program.
The general permit program, as embodied in the federal regulations, contemplates a departure from the procedures which are a precondition to issuance of the individual NPDES permit. As we understand it, a general permit may be issued for storm sewers, or for a category of sources which involve substantially similar operations, discharge the same types of wastes, and require the same types of effluent limitations, operating conditions and monitoring. 40 CFR 122.59(a)(2). The general permit is to be written to cover all such sources in a given geographical area. Id. Provision is made for requiring an individual permit for a source, even if within the specified category and geographical area, under certain conditions which need not be discussed here. 40 CFR 122.59(b)(2).
The procedural prerequisites for the issuance of a general permit are the same as for issuance of individual permits. 40 CFR 122.59(b)(1). However, these prerequisites are not triggered by an application for a permit, as is the case with individual permits, as no application is required for inclusion in a general permit. 40 CFR 122.53(a). Instead, it appears that the administrative agency initiates the issuance of a general permit on its own motion. Once the procedural prerequisites, such as public notice and opportunity for hearing, are satisfied and the permit is issued, new sources appear to be automatically included in the permit. Existing sources with individual permits need only request that the individual permit be revoked. Upon revocation the source automatically becomes subject to the general permit. 40 CFR 122.59(b)(2)(v). Once a general permit has been issued, public notice is not given each time a source becomes subject to the general permit.
The statutory standards and prerequisites for issuance of permits under the Missouri Clean Water Law are found in subsections 2 and 3 of Section 204.051, RSMo 1978. We believe that these subsections control the question of whether general NPDES permits may be issued under Missouri law. Section 204.051 provides, in relevant part:
 2. It shall be unlawful for any person to build, erect, alter, replace, operate, use or maintain any water contaminant or point source in this state that is subject to standards, rules or regulations promulgated pursuant to the provisions of sections 204.006 to 204.141 unless he holds a permit from the [clean water] commission, subject to such exceptions as the commission may prescribe by rule or regulation. . . .
 3. Every proposed water contaminant or point source . . . shall make application to the [director][1] for a permit at least thirty days prior to the initiation of construction or installation or establishment. Every water contaminant or point source in existence when regulations or sections 204.006 to 204.141 become effective shall make application to the [director] for a permit within sixty days after the regulations or sections 204.006 to 204.141
become effective, whichever shall be earlier. The [director] shall promptly investigate each application, which investigation shall include such hearings and notice, and consideration of such comments and recommendations as required by sections 204.006 to 204.141 and any federal water pollution control act. If he determines that the source meets or will meet the requirements of sections 204.006 to 204.141 and the regulations promulgated pursuant thereto, he shall issue a permit with such conditions as he deems necessary to insure that the source will meet the requirements of sections 204.006
to 204.141 and any federal water pollution control act as it applies to sources in this state. If the [director] determines that the source does not meet or will not meet the requirements of either act and the regulations pursuant thereto, he shall deny the permit under the applicable act and issue any notices required by sections 204.006 to 206.141 and any federal water pollution control act.
* * *
We note that subsection 3 provides that every proposed source "shall make application" for a permit at least thirty days prior to commencement of construction. With respect to sources in existence at the time the statute became effective, subsection 3 provides that every source "shall make application" within sixty days after the effective date. Subsection 3 goes on to require the director to promptly investigate each application, and requires the director to determine whether the source meets or will meet the requirements of Sections 204.006 to 204.141, the requirements of any federal water pollution control act, and the requirements of regulations promulgated under the state and federal statutes, prior to issuing or denying the permit. The director is expressly told to issue the permit if the source will meet the requirements of the statutes and regulations, and to deny the permit if the source will not meet those requirements.
We believe that Section 204.051.3 must be read to require that a permit be issued only after an application is made for the permit, and the director undertakes the specified investigation and makes the required determinations concerning the ability of the source to meet state and federal law. We believe it clear that the investigation and determinations must be made with respect to each individual source. It is our opinion that the director may not utilize a general permit system as contemplated by 40 CFR 122.59, because such a system would be contrary to Section 204.051.3.
We are cognizant of the provision in Section 204.051.2 that the Clean Water Commission may by regulation exempt sources or classes of sources from the requirement to obtain a permit. We read that provision to empower the Commission to waive permitting entirely, if it so chooses, but not to waive the application and determinations required by subsection 3, if a permit is required. We believe it clear from the arrangement of subsections 2 and 3, and the language used therein, that the legislature intended that certain prerequisites to the issuance of a permit would apply, if a permit were required by the Commission. Otherwise, we believe that the legislature would have expressly empowered the Commission, in subsection 3, to waive such of those prerequisites as it deemed appropriate, as the legislature did in subsection 2 with regard to the question of whether a permit would be required.
We are aware that the Clean Water Commission has recently adopted amendments to its permitting regulation, 10 CSR 20-6.010, to provide for the issuance of so-called general permits in certain circumstances. See 10 CSR 20-6.010(14). We note that unlike the federal regulations, the Commission's permit regulation does not excuse the source from making a specific application for inclusion in the general permit. Subsection (1)(A) of10 CSR 20-6.010 provides that all persons who operate, use or maintain sources must apply to the director for the permits required by the Clean Water Law, with certain exceptions not relevant to this discussion. Section (14) of the rule, which authorizes general permits, does not exempt the source operator from making an application for inclusion in a general permit. Therefore, we read 10 CSR 20-6.010 to require that any operator of a source who wishes the source to be included in a general permit must apply to the director for such inclusion.
We are also aware that you have interpreted 10 CSR 20-6.010
to require the director, in proposing the issuance of a general permit, to delineate the category of sources which will be subject to the permit so that only sources which meet or will meet the requirements of state and federal law applicable to those sources will be includable in the general permit. After issuance of the general permit, we understand it is your intention to determine, upon receipt of an application for inclusion in the general permit, whether the particular source falls within the parameters of the specified category.
We are of the opinion that the issuance of general permits pursuant to 10 CSR 20-6.010, if carried out as described above, will meet the requirements of Section 204.051.3. Unlike the federal scheme, the state system does contemplate an application with regard to each source, and a determination with regard to each source that it meets or will meet the requirements of the statutes and regulations. The determination will be made before any source can be included in the general permit. This, we believe, satisfies the pre-issuance determination requirements of Section 204.051.3.
Your opinion request also references authority to enforce the general permits, once issued. As a general permit would be issued pursuant to Section 204.051, the same as with an individual permit, the general permit would be enforced in the same way as an individual permit. In Opinion No. 255 — 1974, we held, at Section 11 thereof, that Sections 204.006 to 204.141 contain adequate authority to enforce permits to the degree required by the federal statute and regulations. Therefore, what was said in Opinion No. 255 — 1974 is applicable to your question. Sections204.006 to 204.141 do contain adequate authority to enforce general permits issued under Section 204.051 and 10 CSR 20-6.010.
Your opinion request does not ask, nor do we answer, whether regulation 10 CSR 20-6.010 meets the minimum requirements of 40 CFR 122.59, so as to authorize the director to issue general permits under federal law. However, it is clear that the requirement under the state statute and regulation that an application be made for inclusion of a source in a general permit is not grounds for disapproval of the state's general permit program.40 CFR 123.2(k) provides that with respect to the NPDES program, the states are not precluded from adopting a program which is more stringent or more extensive than the federal program. We view the individual application requirement of the state's general permit system to fall within the scope of 40 CFR 123.2(k).
Conclusion
It is our opinion that state law, specifically Section204.051.3, RSMo 1978, does not allow the issuance of general permits as contemplated under federal regulation 40 CFR 122.59. However, it is our opinion that Section 204.051.3 does allow the issuance of general permits as provided in Clean Water Commission regulation 10 CSR 20-6.010, as that regulation is interpreted by the director of the Department of Natural Resources. It is our further opinion that Sections 204.006 to 204.141, RSMo 1978, provide adequate authority to enforce any general permit issued pursuant to state law.
This opinion, which I hereby approve, was prepared by my assistant, Dan Summers.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Opinion No. 235 — 1974 Opinion No. 255 — 1974 Opinion No. 156 — 1976
[1] Sections 204.006 to 204.141, as adopted in 1973, refer to the executive secretary of the Clean Water Commission. In Opinion No. 235 — 1974, we held that the position of executive secretary of the Clean Water Commission was abolished by adoption of the Omnibus State Reorganization Act of 1974, Senate Bill No. 1, First Extraordinary Session, 77th General Assembly. We further held in that opinion that the director of the Department of Natural Resources was required under the Reorganization Act to cause the policies of the Clean Water Commission to be executed, and therefore assumed the responsibilities of the executive secretary. In Opinion No. 156 — 1976, we held that the responsibility for issuing permits under Section 204.051 rests with the director of the Department of Natural Resources. We shall, in this opinion, refer to the director of the Department of Natural Resources, rather than the executive secretary.